2012 Ark. App. 239

**BISMARCK SCHOOL DISTRICT,**
Appellant

v.

**Paul SIMS, Appellee.**

**No. CA 11–893.**

Court of Appeals of Arkansas.

April 4, 2012.

W. Paul Blume, Little Rock, for Appellant.

J.G. "Gerry" Schulze, Baker & Schulze; Little Rock, for Appellee.

DOUG MARTIN, Judge.

Appellant Bismarck School District (the District) appeals from the decision of the Hot Spring County Circuit Court finding that the nonrenewal of appellee Paul Sims's employment contract violated The Teacher Fair Dismissal Act of 1983, codified at Arkansas Code Annotated section 6–17–1501 *et seq.* The trial court found that Sims's reliance on the high school's 2008–2009 student handbook, which contained erroneous information with respect to the required math credits for graduating seniors in 2009, was not sufficient cause for Sims's nonrenewal and, thus, overturned the decision made by the Bismarck School Board. On appeal, the District argues that the trial court erred by substituting its judgment for that of the Bismarck School Board. We affirm.

The Teacher Fair Dismissal Act requires "just and reasonable cause" for the nonrenewal of a teacher's contract. Ark. Code Ann. § 6–17–1503(a)(1) (Repl.2007). A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district substantially complies with all provisions of the Act and the school district's applicable personnel policies. Ark.Code Ann. § 6–17–1503(c).

Each teacher employed by the board of directors of a school district must be evaluated in writing annually. Ark.Code Ann. § 6–17–1504(a) (Repl.2007). When the administrator charged with the supervision of a teacher believes or has reason to believe that the teacher is having difficulties or problems meeting the expectations of the school district or its administration and the administrator believes or has reason to believe that the problems could lead to termination or nonrenewal of contract, the administrator shall bring in writing the problems and difficulties to the attention of the teacher involved and document the efforts that have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal. Ark.Code Ann. § 6–17–1504(b).

Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing for the next school year unless the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed. Ark.Code Ann. § 6–17–1506(a)(1) (Repl.2007). The notice of recommended nonrenewal of a teacher's contract shall include a statement of the reasons for the recommendation, setting forth the reasons in separately numbered paragraphs so that a reasonable teacher can prepare a defense. Ark.Code Ann. § 6–17–1506(b)(2)(B).

"[T]he board of directors may refuse to renew the contract of the teacher . . . for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause." Ark.Code Ann. § 6–17–1510(b) (Repl.2007). Upon completion of a hearing, the board of directors shall uphold the superintendent's recommendation or reject or modify it, or the board may vote to continue the contract under such restrictions, limitations, or assurances as the board of directors

may deem to be in the best interest of the school district. Ark.Code Ann. § 6–17–1510(b). The exclusive remedy for any nonprobationary teacher aggrieved by the decision made by the board of directors shall be an appeal therefrom to the circuit court of the county in which the school district is located. Ark.Code Ann. § 6–17–1510(d). Additional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the nonrenewal was lawful or unlawful. Ark.Code Ann. § 6–17–1510(d).

David Hopkins, superintendent of the Bismarck School District, recommended that the employment contract of high school counselor Paul Sims be nonrenewed, based on what Hopkins described as "a recurring problem" with seniors not having the proper number of credits to graduate. Hopkins had issued the following notice of nonrenewal to Sims on April 15, 2009:

> During or shortly after the 2007–2008 standards review, conducted by the Department of Education, you were alerted to the fact one of Bismarck's graduates had not completed all the state's requirements for graduation. Because of this serious oversight, Mr. Bray instructed you to review all transcripts and to set up a check system to ensure this type of mistake would not happen again. This directive is documented in the letter Mr. Bray wrote to you dated May 27, 2008. And, because of the issues discovered during the standards visit, I requested the Dawson Coop to audit our student transcripts. This audit was also scheduled as a way to validate compliance with the directive, issued to you in the letter dated May 27, 2008. On Thursday, December 4, 2008, I was informed, by Mr. Bray, that the Dawson Coop employee conducting the transcript audit had discovered that a large number of our current seniors were not on track to graduate. The seniors were not on track to graduate because they were not scheduled to take a fourth math credit as required by the state and district. During a subsequent conversation, with me, you also stated that you were not aware the requirements for graduation had changed.

A hearing was held before the Bismarck School Board on June 4, 2009, to address Hopkins's recommendation. At the hearing, Hopkins testified that the Arkansas Department of Education (ADE) conducts reviews to ensure that school districts are in compliance with its standards of accreditation. The Bismarck School District was up for review for the 2007–2008 school year. During the review on February 21, 2008, it was discovered that one student had graduated with two-and-one-half math credits, instead of three math credits, which was required for seniors graduating in 2008. Hopkins testified that he did not know how the student obtained only two-and-one-half math credits.

Hopkins notified Jarrod Bray, high school principal, of the deficiency and reprimanded him for the oversight. Hopkins instructed Bray to implement a check system to ensure the incident never happened again. In turn, Bray informed Sims in a letter dated May 27, 2008, that, as the high school counselor, it was Sims's job to ensure that all students who graduate have the correct number and type of credits to meet state and district requirements. The letter directed Sims to develop a check system and to review and update every active student transcript before the 2008–2009 school year began. In a letter dated June 11, 2008, Sims responded to Bray's instruction, stated that he believed the student had graduated with the proper credits, denied that the matter resulted from his error, and questioned what his job as

high school counselor entailed. Hopkins testified that, prior to the beginning of the 2008–2009 school year, he told Sims that, regardless of any job description, Sims's job was to ensure that the graduating seniors had the proper number of credits based on state and district requirements. According to Hopkins, "the heart of the counseling position is to ensure that you know the number of credits it takes to graduate, so that you can guide those students toward that point."

Hopkins further testified that, in December 2008, the Dawson Education Service Cooperative conducted an audit of the students' transcripts, which revealed that twenty-one out of fifty-four seniors were "not on track to graduate" because they had not taken four math credits, as required by the state and district for seniors graduating in 2009. On January 8, 2009, Hopkins sent a letter to Sims informing him of the findings from the audit and admonishing him by stating that it was "unacceptable" for Sims, as the high school counselor, not to know the current graduation requirements. In his testimony before the board, Hopkins explained that, whereas seniors prior to 2009 were required to have three math credits to graduate, the requirement changed in 2009 to four math credits.

Hopkins testified that the District had adopted the requirement for four math credits several years prior to 2009. Hopkins testified that he believed he had notified Sims of the change and that, during the 2006–2007 school year, the ADE had sent a memo about districts electing to implement the new, four-math-credit requirement. The memo was sent to the superintendent, co-op directors, and secondary principals. Hopkins conceded that the memo was not sent to counselors.

Hopkins stated that students were supposed to be able to rely on the student handbook, yet the high school's 2008–2009 student handbook was not correct because it reflected that seniors were required to have only three math credits, instead of four, to graduate in 2009. Hopkins testified that, prior to the handbook's adoption, he passed out information on Board policy changes to the principals and they were told to, over the summer, verify that the handbooks and the Board's policies were "jiving." Hopkins testified that, while the 2008–2009 student handbook was incorrect, the District's policy book contained the correct graduation requirements.[1] Hopkins stated that, although he and the Handbook Committee reviewed the student handbook, they did not catch the error concerning the required math credits. Hopkins conceded that, despite having an administrative team reviewing policies to ensure there were no conflicts between the policies and the handbook, "[w]e had a breakdown at the high school."

Sims testified that he had worked as a counselor at the Bismarck School District for fourteen years. Sims stated that, in counseling students, he looked only to the student handbook and likened the student handbook to the Bible. Sims testified that

---

1. In rendering its decision, the trial court relied in part on a section in the Board's policy book that provides:

It shall be the policy of the Bismarck School District that the most recently adopted version of the Student Handbook be incorporated by reference into the policies of this district. In the event that there is a conflict between the student handbook and a general board policy or policies, and the student handbook is more recently adopted than the general board policy, the student handbook will be considered binding and controlling on the matter.

That section was adopted on July 19, 2004, and last revised on August 15, 2005. The 2008–2009 student handbook was adopted by the school board on July 21, 2008.

he took the 2008–2009 student handbook "at face value." According to Sims, ensuring the accuracy of [7]the student handbook was the responsibility of the Handbook Committee, and he was not on that committee. With regard to Hopkins's testimony that the correct graduation requirements were listed in the District policy book, Sims countered that he was unaware of such book and was never given a copy of it.

Sims testified that the school had a computer program called the Arkansas Public School Computer Network (APSCN) on which records were maintained on the students. Because he believed the computer program was unreliable, Sims kept his own records separate from APSCN and, by comparing those records, had pointed out many errors on APSCN in the past. According to Sims, he could not input data because he did not gain access to APSCN until February 2009. With respect to the single student who graduated in 2008 with two-and-one-half math credits, instead of the required three at that time, Sims stated that, according to his records, the student had the required three math credits. Sims testified that someone must have changed the student's schedule, causing her to repeat the same course of Algebra I, which resulted in her obtaining only one-half math credit instead of a full credit for the class. Sims pointed out that he was not the only employee who was able to change schedules and that he was, in fact, absent on the day the student's schedule was changed, as he was in the hospital with his wife who was having surgery.

Sims further testified that he first learned in December 2008 that students graduating in 2009 would be required to have four math credits. According to Sims, Bray relayed this information to him, and it came as a surprise to Sims. Sims explained that, although he was aware since 2004 that the Smart Core and Common Core programs would require four math [8]credits, Sims stated that his understanding was that the programs did not become effective until the 2009–2010 school year. A memo from the ADE provided that students in the seventh grade during the 2004–2005 school year must meet the Smart Core requirements unless their parents signed an informed consent form agreeing to meet the Common Core requirements. The memo was sent to the superintendent, co-op director, secondary principals, and the curriculum coordinator, and Sims obtained the 2004 memo from the curriculum coordinator. Sims testified that he had received no notification that the change to four math credits would affect seniors graduating in 2009.

Sims testified that there was only one evaluation in his personnel file. It was dated February 27, 2009. Bray was the evaluator, and nothing was marked as "unsatisfactory." Sims was rated "proficient" and "distinguished" in all applicable categories, except one category related to keeping accurate records, for which Sims was rated "basic." Indeed, Hopkins testified that Sims had done a good job in obtaining scholarships for the students and that a letter from Bray to parents indicated that Sims had helped to obtain nearly a million dollars in scholarships for the students.

After hearing all of the testimony, the school board determined that the grounds set forth in the superintendent's notice dated April 15, 2009, were true and therefore accepted Hopkins's recommendation that Sims's contract be nonrenewed. It was a unanimous vote, 5–0. On August 7, 2009, Sims filed a "Complaint for Dismissal From Employment," alleging that the District had dismissed him without just and reasonable cause.

810

At a bench trial before the circuit court on December 9, 2010, Sims testified that he did not believe he was obligated to ensure that students have the proper number of credits to graduate. Sims described his job as "guiding the students" and insisted that counseling is not equivalent to scheduling. Sims identified an ADE Student Service Annual Report, which was a form school counselors used to reflect the manner in which time was spent with students present. According to Sims, the form listed counselors' duties but did not indicate that counselors were responsible for ensuring that students have the proper credits to graduate.

The trial court concluded that Sims was discharged in violation of The Teacher Fair Dismissal Act and that his nonrenewal was therefore unlawful pursuant to Arkansas Code Annotated section 6–17–1510. The trial court found that Sims had complied with all duties of his job and reasonably relied upon the 2008–2009 student handbook, which was approved by the superintendent and principal and held out to be correct by the school board. The trial court found that Sims's reliance on the student handbook was not sufficient cause for his discharge and did not evidence a repeated or material neglect of duty. The trial court found that there was no evidence of other just and reasonable cause for Sims's discharge.

Further, the trial court found that the incident that occurred with the one student in 2007–2008 who graduated without the required credits was not related to the situation in 2008–2009 involving the new requirement that students have four math credits in order to graduate. Thus, the trial court found that Sims was not given any assistance to correct a deficiency that could result in nonrenewal. Also, the trial court found that the school board had not substantially complied with the Act in that

Sims was not evaluated annually. The trial court concluded that, although reinstatement was not proper given the length of time that had passed, Sims was entitled to damages in the amount of $44,377.03, plus costs and attorney's fees.

Our standard of review in matters involving The Teacher Fair Dismissal Act is limited to whether the circuit court's decision was clearly erroneous. *Kasinger v. East End Sch. Dist. ex rel. Bd. of Dirs.*, 2011 Ark. App. 595, 385 S.W.3d 885. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.* The question of whether a school district has complied with The Teacher Fair Dismissal Act, however, is a question of law. *Id.* A trial court's conclusions on a question of law will be given no weight on appeal. *Id.*

First, the District argues that, for a counselor not to know the required credits for graduation, or to not "care enough to undertake a simple, easy inquiry, despite being directed to do so, is plain incompetence and material neglect of duty." The District maintains that incompetent performance is "a legitimate basis for dismissal and is a cause which is, *a fortiori*, just and reasonable, in and of itself." The District contends that Sims should have checked another source, such as the District's policies, which contained the correct information regarding required credits for graduation. The District maintains that Sims had an obligation to review and approve the handbook before it was published, yet he failed to do so.

We are not left with a firm conviction that the trial court clearly erred in overturning the Board's decision. While the District goes to great lengths to estab-

lish that Sims bore all of the responsibility for ensuring that students obtained the required credits to graduate and that the problems that occurred in 2007–2008 and 2008–2009 were entirely Sims's fault, the facts do not support this assertion. Moreover, the trial court obviously found Sims's testimony credible, and we do not disturb credibility findings on appeal. *Kasinger, supra.* Further, with regard to the accuracy of the 2008–2009 student handbook, Hopkins admitted that there was "a breakdown" in a review process in which Sims was not involved. Further, the contents of the 2008–2009 student handbook, having been adopted more recently than board policy, controlled over the correct information found in the District's policy book. Accordingly, even if Sims had consulted the District's policies, the incorrect information found in the 2008–2009 student handbook was the final authority. It is neither just nor reasonable to hold Sims to a standard far higher than that of "the professional educator charged with operating the school and for the School Board, elected officials charged with the ultimate responsibility for the District." Under these facts, we cannot say that the trial court clearly erred in finding that Sims's nonrenewal was in violation of the Act.

■ Also, the District argues that the trial court's finding that it failed to sub-stantially comply with the Act in that Sims had only one evaluation in his personnel file is "a red herring" because more evaluations would not have given Sims more information with respect to the reasons for his nonrenewal. Although the District attempts to downplay its failure to evaluate Sims annually as required by the statute, even under the lowered standard from "strict ⌐12compliance" to "substantial compliance," we cannot say that evaluating Sims only once during his fourteen-year tenure at the school amounts to substantial compliance with the Act. The District's failure to even substantially comply with this particular provision of the Act renders Sims's nonrenewal void pursuant to section 6–17–1503(c), such that this court need not determine whether the District also failed to substantially comply by documenting its efforts to assist Sims in correcting a perceived deficiency prior to nonrenewal.

Affirmed.

PITTMAN and GLADWIN, JJ., agree.